**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **NORFE GROUP CORP.,**<br><br>     Plaintiff,<br><br>     v.<br><br>**R.Y. ESPINOSA INC.,** *et al.***,**<br><br>     Defendants. | Civil No. 19-1897 (BJM) |

**ORDER**

Norfe Group Corp. ("Norfe") filed suit against R.Y. Espinosa Inc. ("Espinosa")[1]; Faustino Cortes ("Cortes"); Optima Seguros ("Optima"); QBE Insurance Corp. ("QBE")[2]; and other unknown defendants (collectively "defendants"), alleging violations under the Racketeer Influenced & Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968; Puerto Rico's Insurance Code, P.R. Laws Ann. tit. 26, §§ 2701-2740, and Puerto Rico's Civil Code, P.R. Laws Ann. tit. 31, §§ 3018, 3024.[3] Docket No. ("Dkt.") 4 ("Am. Compl."). Norfe alleges that defendants used the mails and wires to execute a fraudulent scheme whereby they would avoid their obligations to their insureds. *Id.* Defendants moved to dismiss for failure to state a claim, and the court found that Norfe's amended complaint failed to comply with Rule 9(b)'s particularity requirement, as it borderline failed to plead mail fraud with specificity. Dkt. 52. Rather than dismiss the action, the court granted Norfe limited discovery under *New England Data Services, Inc. v. Becher*, 829 F.2d 286 (1st Cir. 1987). Now before the court is parties' dispute regarding the scope of that discovery. *See* Dkts. 79, 83, 84, 85. For the following reasons, Norfe's motion regarding written discovery,

---

[1] Defendants represent that the correct name of this entity is R&G Espinosa International Adjusters, LLC.
[2] Defendants represent that the correct name of this entity is QBE Seguros – Puerto Rico.
[3] Claims against several other individual defendants have been dismissed. *See* Dkt. 87.

Dkt. 79, and motion to compel, Dkt. 84, are **DENIED**. However, Norfe will be permitted strictly limited additional discovery as detailed below.

To understand the proper scope of *Becher* discovery here, it is first necessary to understand the nature of Norfe's RICO claims. Congress enacted RICO to support the federal government's "war against organized crime," *United States v. Turkette*, 452 U.S. 576, 587 (1981) and to combat "enduring criminal conduct," *Libertad v. Welch*, 53 F.3d 428, 445 (1st Cir. 1995). The statute authorizes both the criminal prosecution of RICO violators, *see* 18 U.S.C. § 1962, and creates "a generous private right of action—successful plaintiffs are entitled to triple damages if they can prove they were 'injured in [their] business or property by reason of a violation of section 1962.'" *Home Orthopedics Corp. v. Rodriguez*, 781 F.3d 521, 527 (1st Cir. 2015) (quoting 18 U.S.C. § 1964(c)).

RICO liability breaks down to four essential elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). The statute includes numerous illegal acts in its definition of "racketeering activity." *Home Orthopedics*, 781 F.3d at 528 (citing 18 U.S.C. § 1961(1)). Among these are mail and wire fraud, 18 U.S.C. §§ 1341, 1343, which are the relevant predicate acts in Norfe's amended complaint. Mail fraud "occurs whenever a person, 'having devised or intending to devise any scheme or artifice to defraud,' uses the mail 'for the purpose of executing such scheme or artifice or attempting so to do.'" *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008) (quoting 18 U.S.C. § 1341). "The gravamen of the offense is the scheme to defraud, and any mailing that is incident to an essential part of the scheme satisfies the mailing element [] even if the mailing itself contain[s] no false information." *Id.* (citation and internal quotation marks omitted). Similarly, "to make out a civil claim under RICO by way of wire fraud, a plaintiff must allege that a group of defendants 'engaged in a scheme to defraud with the specific intent to defraud and that they used . . . the interstate wires in furtherance of the scheme.'" *Cordero-Hernandez v. Hernandez-Ballesteros*, 449 F.3d 240, 244 (1st Cir. 2006) (quoting *McEvoy Travel Bureau,*

Norfe Group Corp. v. R.Y. Espinosa Inc., et al., Civil No. 19-1897 (BJM)                                   3

*Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 790 (1st Cir. 1990) and citing *Ahmed v. Rosenblatt*, 118 F.3d 886, 888 (1st Cir. 1997)).

A single instance of wire or mail fraud does not constitute a "pattern of racketeering activity." *United States v. Rodriguez-Torres*, 939 F.3d 16, 29 (1st Cir. 2019). Rather, "[a] pattern of racketeering activity requires at least two predicate acts of racketeering within ten years of each other." *Id.* Additionally, the predicate acts must be related and "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

Additionally, where a RICO claim is based on fraud, the plaintiff must comply with the pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure. *Feinstein v. ADR Tr. Corp.*, 942 F.2d 34, 42 (1st Cir. 1991). Rule 9(b) creates a heightened pleading standard for allegations of fraud, under which "a party must state with particularity the circumstances constituting fraud or mistake," though the elements of "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "As in any other fraud case, the pleader is required 'to go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communications perpetrating that fraud.'" *Id.* (quoting *Becher*, 829 F.2d at 291; *see also Vazquez-Baldonado v. Domenech*, 792 F. Supp. 2d 218, 222 (D.P.R. 2011) ("Plaintiff must plead with particularity when and where the wire communications took place, in addition to what information was exchanged."). "The purpose of Rule 9(b)'s particularity requirement are threefold: (1) to place defendants on notice and allow them to prepare a meaningful response, (2) to preclude the use of groundless fraud claims as pretext for discovery or 'strike suits,' and (3) to safeguard defendants from the reputation damage of frivolous charges." *Efron v. Embassy Suites (Puerto Rico), Inc.*, 47 F. Supp. 2d 200, 204 (D.P.R. 1999), *aff'd*, 223 F.3d 12 (1st Cir. 2000) (citing *Becher*, 829 F.2d at 289).

Here, Norfe bases its RICO claims on the following allegations. Defendants are insurance companies and adjusters who concocted a scheme to defraud their insureds,

particularly after Hurricane Maria devastated Puerto Rico on September 20, 2017. Am. Compl. ¶¶ 4-7, 19. Defendants conspired to defraud Puerto Rican property owners (including Norfe) by collecting premiums and charging for insurance policies that offered coverage for damages they knew they could not cover. *Id.* ¶¶ 4-7. Defendants agreed that they would find ways to deny, reduce, or delay full payment on their insureds' claims; intentionally fail to conduct full and prompt investigations; intentionally fail to train, supervise, and manage adjusters to ensure prompt and full payments; fail to implement proper standards for the adjustment and investigation of claims; fail to notify insureds of their right to mediate; and otherwise engage in unfair claims adjustment practices. *Id.* ¶ 34. The use of mail was integral to this scheme, as defendants billed for insurance premiums via U.S. mail. *Id.* ¶ 35. Working together, defendants withheld tens of billions of dollars which should have gone to rebuild and repair Puerto Rico properties. *Id.* ¶¶ 9, 14.

In Norfe's case, QBE insured Norfe with a policy that covered, without limitation, damage to real or personal property caused by certain perils, including winds, rain, and other conditions attendant to hurricanes. *Id.* ¶¶ 25-27. Norfe's real property was damaged by Hurricane Maria.[4] *Id.* ¶¶ 29-30. Defendants agreed to pay Norfe for the related claim but reduced the payout by $451,852, having incorrectly determined that the property had been abandoned prior to Hurricane Maria. *Id.* Norfe's property was also damaged by vandalism that occurred after Hurricane Maria passed. *Id.* Norfe made a separate claim under its insurance policy for that damage, but defendants "reneged and refused to cover [Norfe's] risk of vandalism." *Id.* ¶ 29. Defendants used mail and email to communicate with Norfe regarding its insurance policy and/or claims. *Id.* ¶ 61. Their conduct with respect

---

[4] It is somewhat difficult to discern what happened to Norfe based on paragraphs 29-30 of Norfe's amended complaint. But I take the facts as true and draw all reasonable inferences in Norfe's favor, *Miss. Pub. Emps.' Ret. Sys. v. Boston Scientific Corp.*, 523 F.3d 75, 85 (1st Cir. 2008), as the purpose of the discovery underway is to see if Norfe can properly state its RICO claims after limited discovery.

to Norfe was part of defendants' general scheme to defraud insureds by failing to properly investigate and settle their claims. *See id*.

As the court has previously explained, these allegations do not comply with Rule 9(b)'s particularity requirement, as they borderline fail to plead mail fraud with specificity. Dkt. 52. Nonetheless, Norfe's RICO claims were not dismissed outright. Despite Rule 9(b)'s heightened pleading requirements, the First Circuit recognizes that "it will often be difficult for a plaintiff to plead with specificity when the facts that would support her claim are solely in the possession of a defendant....," *Cordero-Hernández v. Hernández-Ballesteros*, 449 F.3d 240, 244 (1st Cir. 2006) (citing *Becher*, 829 F.2d at 290), a circumstance which can frequently arise in RICO mail and wire fraud cases. *See Becher*, 829 F.2d at 290-91 ("In the instant case, it is seemingly impossible for the plaintiff to have known exactly when the various defendants phoned or wrote to each other or exactly what was said."). Thus, "a court faced with an insufficiently specific claim may permit limited discovery in order to give a plaintiff an opportunity to develop the claim and amend the complaint." *See Cordero-Hernández*, 449 F.3d at 244 (citing *Becher*, 829 F.2d at 290). This discovery is neither automatic nor offered to plaintiffs as a matter of right. *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997) (citing *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 44 (1st Cir. 1991). Rather, *Becher* discovery is appropriate for a limited period to allow plaintiffs to obtain specific information that is "likely in the exclusive control of the defendant." *Becher*, 829 F.2d at 290–91. In allowing *Becher* discovery, courts must "keep in mind the balance between, on the one hand, Rule 9(b)'s purposes of 'avoiding groundless claims' and providing adequate notice to defendants, and on the other, 'the policy in favor of allowing amendments and trying cases on their merits, and against dismissals which would deny plaintiffs their day in court.'" *Puerto Rico Med. Emerg. Group, Inc. v. Iglesia Episcopal Puertorriqueña, Inc.*, 118 F. Supp. 3d 447, 458 (D.P.R. 2015) (quoting *Becher*, 829 F.2d at 292). In light of the First Circuit's holding in *Becher*,

this court allowed limited discovery to give Norfe an opportunity to develop its claims and further amend its complaint. Dkt. 52.

On November 16, 2020, parties submitted a joint initial scheduling memorandum in which Norfe requested discovery to depose certain individuals during the month of December 2020. Dkt. 63 at 25. The court held an initial scheduling teleconference on November 24, 2020, at which time parties agreed that discovery was strictly limited to correcting possible defects in Norfe's amended complaint. Dkt. 66. The court ordered that limited discovery close by January 15, 2021. *Id.*

Norfe initially deposed or received statements from nine individuals. Dkt. 68 at 1. As of January 4, Norfe represented that "[i]t could be argued that plaintiff now has enough to show [RICO] compliance," but it nonetheless moved to extend discovery, wishing to depose four additional witnesses such that limited discovery would have "more completeness." *Id.* The court granted Norfe's motion, extending discovery to February 4. Dkt. 71. On February 3, Norfe again moved to extend discovery, as depositions had not been completed and certain written discovery remained outstanding. Dkt. 72. The court granted Norfe's motion to extend discovery until March 19 and explained that no further extensions would be granted. Dkt 74.

On January 25, Norfe sent a request for production of documents to defendants, which has not been answered and which spurred the present discovery dispute. *See* Dkt. 73-1. According to Norfe, it sought written discovery because deponents were unable to answer its questions regarding specific wire and mail communications that took place between Mexico, Puerto Rico, and other countries and which allowed defendants to carry out the alleged fraudulent scheme. For instance, Norfe "inquired about the contracts executed between the RICO Defendants in connection with the RICO scheme at issue in the Complaint," and which were communicated from abroad to Puerto Rico by phone and email, but deponents could not recall specific details regarding those contracts. Dkt. 79 at 3-4. Norfe also learned by deposition that defendants communicated via the wires to

Norfe Group Corp. v. R.Y. Espinosa Inc., et al., Civil No. 19-1897 (BJM)                      7

negotiate and approve claims over $1 million, but deponents could not provide specific details about those communications. *Id.* at 4. Deposition testimony suggested that there were between 200 and 250 such claims. *Id.* at 4 n.2. Additionally, Norfe asked deponents for specific details regarding all payments requested by defendants, which involved both email and wire transfers, but deponents could not provide specific information about these communications. *Id.* at 4-5. Because it could not obtain answers to these questions via depositions, Norfe sent defendants a written request for production of documents.

Defendants maintain that the court never authorized written discovery and that, even if written discovery were permitted, Norfe seeks material outside the scope of the limited discovery permitted under *Becher*. Norfe contends that the court authorized written discovery when it granted its motion to extend discovery deadlines and asserts that it properly seeks discovery about the time, place, and content of the mail or wire communications relevant to its RICO claims.

*Becher* permits limited discovery to allow plaintiffs to obtain specific information that is "likely in the exclusive control of the defendant." *Becher*, 829 F.2d at 290–91. It does not authorize a plaintiff "to launch a belated 'fishing expedition' on the brink of a Rule 12(b)(6) dismissal, without having made at least one manifest allegation of actionable fraud." *Rodriguez-O'Ferral v. Trebol Motors Corp.*, 998 F.2d 1001 (1st Cir. 1993). Norfe has already been granted two extensions of time to conduct limited discovery and deposed several witnesses. It has also admitted that it arguably already possessed sufficient information to state its RICO claims, but that it wished for "more completeness" in discovery. Dkt. 68 at 1. Moreover, Norfe's amended complaint expressly states that some of the communications involved in the alleged fraud were mailed directly to Norfe, Am. Compl. ¶ 61, revealing that they were not in defendants' exclusive control. Yet, Norfe did

not meet Rule 9(b)'s pleading requirements even with respect to these communications.[5] Under these circumstances, permitting any *Becher* discovery was generous. *See Sanchez v. Triple-S Mgt. Corp.*, 446 F. Supp. 2d 48, 56 (D.P.R. 2006), aff'd, 492 F.3d 1 (1st Cir. 2007) (explaining that *Becher* discovery was not available where "any communications transmitted in furtherance of a fraud scheme necessarily must be (or must have been) in Plaintiffs' possession").

Nonetheless, Norfe has sought extensive additional written discovery, including by making requests that appear to go beyond that which would be necessary to state a RICO claim. For instance, Norfe has requested a complete copy of electronic files for all insurance claims amounting to $1 million or more, which were presented by QBE's insureds in connection with damages caused by Hurricanes Irma and Maria. Dkt. 73-1 at 7. Norfe also requested all emails sent by various individuals in connection with those claims, various internal reports related to those claims, and copies of related invoices. *Id.* at 9-13, 16-17. Deposition testimony suggested that there were between 200 and 250 such claims. Dkt. 79 at 4 n.2. Even assuming that Norfe would need information regarding other insureds' claims for purposes of its own RICO cause of action, it would not need to provide specific details regarding each and every one of those 250 insurance claims, related emails, internal reports, and invoices to satisfy Rule 9(b). *See Puerto Rico Med. Emerg. Group, Inc. v. Iglesia Episcopal Puertorriqueña, Inc.*, 118 F. Supp. 3d 447, 458 (D.P.R. 2015) ("To be sure, because [plaintiff] alleges an expansive scheme spanning several years and including hundreds of misrepresentations, Rule 9(b) does not require it to plead every individual misrepresentation with specific detail."). "Setting forth the date, sender, recipient [], and mode of delivery for a representative sample . . . would suffice." *Id.*

---

[5] It is possible that Norfe could not plead the interstate nature of these communications with specificity if it did not know the geographic origin of the mailings. However, it certainly could plead the time and content of those communications, which presumably were within its own control.

It is clear from a review of the written discovery requests that Norfe seeks information beyond that which is necessary to state a civil RICO claim and beyond that which is in defendants' exclusive control. *See* Dkt. 73-1 at 7 (requesting complete copies of Norfe's files, which presumably include documentation that Norfe would also have); *id.* at 17 (requesting copies of all email messages between QBE personnel and Norfe's David Efron). Still, not every one of Norfe's requests are overbroad. Rather, Norfe also seeks information related to its RICO allegations and peculiarly within defendants' control. For instance, it seeks copies of all email messages between QBE personnel and an adjuster who investigated Norfe's claims. *Id.* at 17. If, as the amended complaint alleges, QBE and the adjuster used email communications to defraud Norfe, this request—which seeks information exclusively in defendants' control—would produce information necessary to pleading fraud with specificity.

Mindful both of the challenges inherent to pleading RICO mail fraud claims and of Rule 9(b)'s purpose to protect defendants from the harms of groundless fraud claims, I will permit strictly limited additional discovery. Defendants are not obliged to respond to the written requests presented to the court at Dkt. 73-1. However, Norfe may send new written requests to defendants within the following parameters:

- Norfe may only seek documents that were referenced during depositions, but about which deponents were unable to provide details.
- Generally, Norfe may only seek documents related to its own insurance policy and claims. However, it may seek information related to a small number of other insureds' claims to provide a representative sample of predicate acts of mail or wire fraud, if doing so is necessary for stating its RICO claims with particularity.

Norfe must submit its written discovery requests to defendants by May 14. Discovery will close June 14. Norfe must submit an amended complaint by June 24. The motions filed at Dkts. 79 and 84 are **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 7th day of May 2021.

            *S/ Bruce J. McGiverin*
            BRUCE J. MCGIVERIN
            United States Magistrate Judge