## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**NORFE GROUP CORP.**,
    Plaintiff,

    v.                                                    Civil No. 19-1897 (BJM)

**R.Y. ESPINOSA INC. ET AL.**,
    Defendants.

## OPINION AND ORDER

Plaintiff Norfe Group Corp. ("Norfe") filed suit against Defendants R&G Espinosa International Adjusters, LLC ("R&G")[1] and QBE Insurance ("QBE")[2] (collectively "Defendants"), along with other named and unnamed individuals and insurance companies, claiming that Defendants committed violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d), along with many violations of the Insurance Code of Puerto Rico. Docket No. ("Dkt.") 90. Norfe invokes the court's federal question jurisdiction. *Id*. at 5. Defendants R&G and QBE each separately moved to dismiss Norfe's claims. Dkts. 92, 96. Norfe opposed Defendants' motions to dismiss, Dkt. 99, and Defendants submitted replies further supporting the motions to dismiss. Dkts. 105, 106. This case is before me by consent of the parties. Dkts. 63, 64, 65. For the following reasons, Defendants' motions to dismiss are **GRANTED**.

## BACKGROUND[3]

Norfe owns real estate in Puerto Rico. R&G is a Florida-based company authorized to do business in Puerto Rico. QBE is an insurance company that provided property insurance coverage

---

[1] Incorrectly named R.Y. Espinosa Inc. when this case was first filed.
[2] QBE notes that the company is now known as "OPTIMA SEGUROS" and that Norfe's complaint incorrectly named the company; for consistency's sake, I shall refer to the company by using the name cited by Norfe.
[3] The following facts are drawn from Norfe's second amended complaint (Dkt. 90) and for the purposes of the motion to dismiss do not appear to be disputed as written here.

*Norfe Group Corp. v. R.Y. Espinosa Inc. et al.*, Civil No. 19-1897 (BJM)                    2

to Norfe. The claims in question arose out of damage to and destruction of Norfe's property caused by Hurricane María on or about September 20, 2017. R&G and QBE do not challenge the court's jurisdiction to hear Norfe's claims, only the sufficiency of Norfe's pleadings.

Norfe possessed an insurance policy issued by QBE on real estate in Puerto Rico. The policy purportedly provided Norfe with insurance coverage against (a) loss of, damage to, vandalism of, or destruction of real and personal property owned, used, leased, or intended for use by Norfe; (b) loss of, damage to, vandalism of, or destruction of any interest of Norfe in real or personal property in Norfe's care, custody, or control; (c) any lost profits resulting from the necessary interruption of Norfe's business caused by any loss of, damage to, vandalism of, or destruction of real or personal property belonging to Norfe; and (d) loss in the nature of extra business and operating expenses incurred by Norfe as a result of loss of, damage to, vandalism of, or destruction of real or personal property belonging to Norfe. The policy supposedly covered winds, rain and other conditions caused by hurricanes and other meteorological events.

Norfe claims that since on or around September 20, 2017, when Hurricane Maria hit Puerto Rico, Defendants have been operating a scheme to defraud insurance policy holders in Puerto Rico. Elements of the scheme allegedly include hiring R&G solely for the purpose of delaying or reneging on insurance claims while ousting former adjusters in order to do so; not training, supervising, or managing adjusters properly; hiring field inspectors with no preparation or experience in the Puerto Rico real estate market; not treating policyholders in good faith; failing to implement proper standards for the adjustment and investigation of claims; not paying clearly owed portions of claims; adjusting damages estimates downwards in over 60% of all claims; failing to notify policyholders of their right to mediate their claims; and only negotiating disbursements in accordance with the damages estimates if a policyholder complained. Norfe

claims that Defendants have committed several RICO violations in the process and also invokes supposed violations of the Insurance Code of Puerto Rico under the doctrine of supplemental jurisdiction. However, Norfe does not cite any specific examples of Defendants engaging in such behavior other than towards Norfe.

Norfe alleges that Defendants' scheme was carried out in part via phone and/or electronic messages and that the case therefore has RICO implications. Norfe cites five such messages in particular: a December 1, 2017 email in which a field adjuster supposedly wrote to Defendants that losses suffered on Norfe's insured property would likely exceed the full $3,600,000 the property was insured for, making the property "uninsurable"; a December 13, 2017 email in which the same adjuster stated that the losses suffered on the property were being "reduced" to an amount nearer to $3,600,000, noting that he planned to apply a policy deduction of 15% because the property was apparently "vacant"; a February 2, 2018 message to Norfe from personnel for Defendants stating that QBE insurance would ultimately determine whether to apply the 15% vacancy deduction; a July 31, 2018 email in which QBE personnel supposedly stated that the vacancy provision in Norfe's policy was inapplicable because the policy had been reissued and QBE was aware that the property at issue was vacant when they collected premiums on the policy; and a December 2018 offer of payment made to Norfe as outlined below. Norfe claims that there are "hundreds, if not thousands" of other emails that prove the implementation of Defendants' purported scheme as well.

In December 2018, Defendants presented Norfe with a $2,356,444 offer of payment in accordance with the policy on Norfe's property, which according to Norfe had been "adjusted downwards" by applying a vacancy deduction and other adjustments. Norfe refused this amount, and Defendants increased the offer to $2,456,419, which Norfe ultimately accepted. However,

*Norfe Group Corp. v. R.Y. Espinosa Inc. et al.*, Civil No. 19-1897 (BJM)                    4

Norfe claims to have accepted the offer under duress; Norfe now argues that the payment amount was insufficient and that the offer was unfairly low due to Defendants' fraudulent scheme. Norfe now alleges "dozens" of violations of the RICO mail fraud statute, 18 U.S.C. § 1341, the wire fraud statute, 18 U.S.C. § 1343, and numerous violations of the Puerto Rico Insurance Code, including violations of 26 P.R. Laws Ann. §§ 2016a(1), (2), (3), (4), (5), (6), (7), (8), (12), (13), (14), (15), (17), (19), and (20).

## APPLICABLE LEGAL STANDARDS

When faced with a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court "accept[s] as true all well-pleaded facts alleged in the complaint and draws all reasonable inferences therefrom in the pleader's favor" to determine whether the complaint states a claim for which relief can be granted. *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011). The court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Starr Surplus Lines Ins. Co. v. Mountaire Farms Inc.*, 920 F.3d 111, 114 (1st Cir. 2019) (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)) (internal quotations omitted). In undertaking this review, the court must

> first, 'isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements[,]' then 'take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief.'

*Zell v. Ricci*, 957 F.3d 1, 7 (1st Cir. 2020) (alterations in original) (quoting *Zenón v. Guzmán*, 924 F.3d 611, 615–16 (1st Cir. 2019)). "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job," which requires drawing on "'judicial experience and common sense.'" *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Additionally, "the Supreme Court has . . . held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" *Rodriguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)). "In so doing, the Court disavowed the oft-quoted language of *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.*; *see Twombly,* 550 U.S. at 562-63. "The Court found that the 'no set of facts' language, if taken literally, would impermissibly allow for the pleading of 'a wholly conclusory statement of [a] claim.'" *Id.* (quoting *Twombly*, 550 U.S. at 561).

Where a RICO claim is based on mail or wire fraud, the plaintiff must also comply with the pleading standards of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). *See, e.g.*, *Feinstein v. ADR Tr. Corp.*, 942 F.2d 34, 42 (1st Cir. 1991). Rule 9(b) creates a heightened pleading standard for allegations of fraud, under which "a party must state with particularity the circumstances constituting fraud or mistake," though the elements of "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "As in any other fraud case, the pleader is required 'to go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communications perpetrating that fraud.'" *Id.* (quoting *New England Data Services, Inc. v. Becher*, 829 F.2d 286, 291 (1st Cir. 1987); *see also Vazquez-Baldonado v. Domenech*, 792 F.Supp.2d 218, 222 (D.P.R. 2011) ("Plaintiff must plead with particularity when and where the wire communications took place, in addition to what information was exchanged."). "The purpose of Rule 9(b)'s particularity requirement are threefold; [sic] (1) to place defendants on notice and allow them to prepare a meaningful response, (2) to preclude the use of groundless fraud claims

as pretext for discovery or 'strike suits,' and (3) to safeguard defendants from the reputation damage of frivolous charges." *Efron v. Embassy Suites (Puerto Rico), Inc.*, 47 F.Supp.2d 200, 204 (D.P.R. 1999), aff'd, 223 F.3d 12 (1st Cir. 2000) (citing *Becher*, 829 F.2d at 289).

Congress enacted RICO to support the federal government's "war against organized crime," *United States v. Turkette*, 452 U.S. 576, 587 (1981) and to combat "enduring criminal conduct," *Libertad v. Welch*, 53 F.3d 428, 445 (1st Cir. 1995). The statute authorizes both the criminal prosecution of RICO violators, see 18 U.S.C. § 1962, and creates "a generous private right of action—successful plaintiffs are entitled to triple damages if they can prove they were 'injured in [their] business or property by reason of a violation of section 1962.'" *Home Orthopedics Corp. v. Rodriguez*, 781 F.3d 521, 527 (1st Cir. 2015) (quoting 18 U.S.C. § 1964(c)).

RICO liability breaks down to four essential elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). The statute includes numerous illegal acts in its definition of "racketeering activity." *Home Orthopedics*, 781 F.3d at 528 (citing 18 U.S.C. § 1961(1)). Among these are mail and wire fraud. 18 U.S.C. § 1341, 1343. To make out a civil claim under RICO by way of mail or wire fraud, a plaintiff must allege that a group of defendants "engaged in a scheme to defraud with the specific intent to defraud and that they used the United States mails and/or the interstate wires in furtherance of the scheme." *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 790 (1st Cir. 1990).

Of course, a single instance of mail or wire fraud does not constitute a "pattern of racketeering activity." "A pattern of racketeering activity requires at least two predicate acts of racketeering within ten years of each other." *United States v. Rodriguez-Torres*, 939 F.3d 16, 29 (1st Cir. 2019). Additionally, the predicate acts must be related and "amount to or pose a threat of

continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). The latter

requirement means that a RICO plaintiff must show "continuity." *Home Orthopedics*, 781 F.3d at

528.

> [A] plaintiff can show continuity in one of two ways. Under the "closed" approach, a
> plaintiff would have to prove a "closed period of repeated conduct" that "amounted to . . .
> continued criminal activity." Alternatively, under the "open-ended" approach, a plaintiff
> could satisfy the continuity requirement by showing "past conduct that by its nature
> projects into the future with a threat of repetition."

*Id.* (quoting *H.J. Inc.*, 492 U.S. at 237, 241).

## DISCUSSION

In a second amended complaint, Norfe alleges two causes of action against Defendants

under RICO: 1) a cause of action in accordance with 18 U.S.C. § 1962(c) ("1962(c)"); and 2) a

cause of action under 18 U.S.C. § 1962(d) ("1962(d)"). Under 1962(c), it is unlawful "for any

person employed by or associated with any enterprise engaged in, or the activities of which affect,

interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of

such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

Under 1962(d), it is unlawful for any person to conspire to violate 1962(c). Norfe's 1962(d) claim

will necessarily fail if Norfe's 1962(c) claim is insufficient. *See, e.g.*, *Lightning Lube, Inc. v. Witco

Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) ("Any claim under section 1962(d) based on a conspiracy

to violate the other subsections of section 1962 necessarily must fail if the substantive claims are

themselves deficient.") (quoting *Leonard v. Shearson Lehman/Am. Exp. Inc.,* 687 F.Supp. 177,

182 (E.D. Pa. 1988)).

In response, Defendants contend that the Norfe's pleadings of the allegations within the

second amended complaint fail to comply with Rule 9(b)'s particularity requirement and that

Norfe's pleadings are therefore insufficient. Relevantly, Defendants contend that Norfe has not

sufficiently alleged predicate acts of racketeering activity, that Norfe has not sufficiently alleged the presence of a pattern of racketeering activity, and that the court should decline to exercise supplemental jurisdiction over Norfe's claims arising under Puerto Rico law if Norfe's RICO claims are dismissed.

Defendants first contend that Norfe has not sufficiently alleged predicate acts of racketeering activity. Indeed, Norfe primarily makes conclusory claims regarding purported predicate acts that are not supported by evidence or reasoned argumentation. Initially, Norfe alleges that "R&G Espinosa International Adjusters, LLC was retained by QBE Insurance with the sole purpose of delaying and reneging on the claims" and that R&G was charged with "safeguarding" QBE's interests. However, Norfe cites no facts or evidence in support of these wholly conclusory claims. Norfe states that Defendants would hire inexperienced inspectors who would provide damages-cost estimates to Defendants through email and internet services facilitated by interstate wire communication services and that "Defendants would then fraudulently adjust down the damages-cost estimates prepared for property damages claimed by insureds." Norfe also notes that this took place in no less than 60% of the claims presented to Defendants. However, Norfe does not explain why such behavior would be fraudulent or part of a scheme of any kind rather than standard in the insurance industry, merely stating in conclusory fashion that such behavior is fraudulent. Norfe claims that "QBE Insurance fraudulently rebuffed a subsequent vandalism claim for damages suffered at Plaintiff's real property while Defendants purposely and fraudulently stalled payment on Plaintiff's original insurance claim." However, Norfe does not explain or develop this vandalism claim at all. Norfe also fails to show that the policy deduction due to the property allegedly being vacant was in any way fraudulent. Even if the property was in fact occupied, Norfe fails to allege that Defendants were aware of this. As noted above, claims of

fraud must be stated with particularity in accordance with Rule 9(b). *Feinstein*, 942 F.2d at 42. All of these arguments and claims are therefore waived. *See also United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Furthermore, it is unclear whether Norfe has alleged predicate acts of mail fraud at all. Again, in fraud cases, the plaintiff must state the time, place and content of the alleged mail and wire communications perpetrating the fraud in accordance with Rule 9(b); fraud cannot be averred generally. However, it appears that the only actual evidence that Norfe cites of potentially fraudulent behavior consists of five electronic and/or phone messages sent between various parties to the present matter. As a result, it seems that Norfe only cites potential examples of wire fraud and not of mail fraud.

At least three of the five messages in question clearly did not constitute predicate acts. For instance, Norfe claims that a February 2, 2018 message states that a "15% vacancy deduction was a matter not to be decided by R&G Espinosa and its field adjusters but rather by QBE Insurance" despite the fact that R&G Espinosa's field adjuster had "concocted the fraudulent application of that so-called deduction." Despite Norfe's claims, it seems probable that the message merely communicated the truth – that QBE had the ultimate decision-making power regarding the vacancy deduction – and it is unclear how or why the message would be covering up fraudulent behavior regardless. Another one of the messages cited by Norfe dated December 13, 2017 deals with Defendants' purportedly incorrect belief that the insured property was vacant and discusses plans to adjust Norfe's insurance policy downwards, but as noted above, Norfe does not explain how or why such actions were fraudulent. Another message cited by Norfe contains a December 2018 offer to pay out $2,356,444 in settlement of Norfe's insurance claim; yet again, Norfe does not

explain how offering less than the full original value that the property was insured for was fraudulent.

Norfe notes only two emails, one dated December 1, 2017, and one dated July 31, 2018, that potentially include more damning content. The first email (dated December 1, 2017) purportedly establishes that a field adjuster for Defendants communicated that the losses suffered on the property would likely exceed the insured value of $3,600,000.00, supposedly making the property "no longer insurable." However, Norfe claims that Defendants later "fraudulently induced" Norfe to insure the property with a policy that included coverage for vandalism claims and damages caused to the property in its then-current condition. Indeed, Norfe appears to be implying that Defendants committed fraud in the inducement by trying to get Norfe to enter another policy that Defendants knew Norfe could never collect on. However, Norfe does not make any showing that Defendants had the intent to get Norfe to enter another policy at the time the December 1, 2017 email was sent. If Norfe's allegations regarding this email are true, Defendants' behavior later on could perhaps be criminal, though I reserve judgment on the issue; however, the email itself does not appear to have helped further any fraudulent scheme.

Meanwhile, Norfe's claims regarding the second email (dated July 31, 2018) are confusingly drafted and somewhat unclear. Norfe may again be claiming that fraud in the inducement occurred, arguing that the email reflects that QBE assured Norfe that even though the property was vacant, it would still be covered by the vandalism insurance policy, then claimed that it actually was not covered when Norfe tried to collect on the policy. Again, however, Norfe does not explain how the email would have helped Defendants actually further such a scheme rather than simply reflecting what was already true at the time. Even if Norfe's allegations are true, the email suggests no continuing plan or scheme to defraud Norfe, nor is it clear how it would help

Defendants further any other scheme alleged. *See Zannino*, 895 F.2d at 17 (vague claims are deemed waived).

Norfe has not sufficiently alleged that the emails, and particularly the second email, were sent through interstate wire services. In other words, Norfe has not sufficiently alleged the "place" of the emails in accordance with Rule 9(b). Norfe states conclusively that since the second communication was "exchanged via email," it was therefore also exchanged "through interstate wire services." However, it is unclear that the email actually passed through the interstate wires. As Norfe notes, the second communication was internal to QBE, and Norfe fails to identify who received the email or how many individuals the email was sent to. It seems entirely feasible that the second email (and perhaps also the first) did not pass interstate at all. RICO wire fraud requires a communication to cross state lines. *See, e.g.*, *Hernandez v. Ballesteros*, 333 F.Supp.2d 6, 12 (D.P.R. 2004) ("Here, Plaintiffs did not allege that telephone communications between Cordero and Defendants went outside of Puerto Rico. Thus, Plaintiffs has only pled the use of *intrastate* communications as wire fraud, which are outside of the reach of the statute. As such, Plaintiffs have failed to plead RICO predicate acts . . ."). As a result of all of the above, Norfe's RICO claims should be dismissed due to Norfe's failure to sufficiently allege predicate acts on the part of Defendants.

Defendants also claim that Norfe has not sufficiently alleged the presence of a pattern of racketeering activity. Indeed, even assuming that Norfe has established that Defendants' emails were sent in furtherance of a fraudulent scheme against Norfe, Norfe's RICO claims would still fail due to the lack of any sufficiently established pattern or threat of repetition on the part of Defendants. Norfe must sufficiently allege that Defendants' fraudulent acts include a specific threat of repetition extending indefinitely into the future or that Defendants have committed

predicate acts extending over a substantial period of time that amount to a threat of continued criminal activity. *See Home Orthopedics*, 781 F.3d at 528; *Atl. Acquisitions, LLC v. J.H. Reid Gen. Contractor*, 909 F.Supp.2d 32, 35–36 (D. Mass. 2012). However, Defendants' purportedly fraudulent acts include no threat of repetition, as even assuming that Norfe had successfully alleged that Defendants had perpetrated a fraudulent scheme, Defendants have already completed the scheme alleged and Norfe has entirely failed to show that Defendants' actions extended to other parties (despite making vague allegations to this point). *Cf. Atl. Acquisitions*, 909 F.Supp.2d at 36-37 (noting that schemes which have a clear and terminable goal have a natural ending point and therefore cannot support a finding of open-ended continuity).

Additionally, assuming that Norfe had in fact established that Defendants' emails furthered a fraudulent scheme, Norfe has failed to show that Defendants have committed predicate acts extending over a substantial period of time that amount to a threat or a pattern of continued criminal activity. A "substantial period of time" is more than a few weeks or months, and numerous predicate acts over the course of several years clearly meet the bar. *Id.* at 35. In cases that fall between these extremes, such as the present matter, "the First Circuit has consistently declined to find . . . [RICO liability] where the alleged predicate acts involve 'one scheme with a singular objective and a closed group of target victims.'" *Id.* at 36 (quoting BLANK). "RICO is not aimed at a single narrow criminal episode, even if that episode involves behavior that amounts to several crimes (for example, several unlawful mailings)." *Sys. Mgmt., Inc. v. Loiselle*, 303 F.3d 100, 105 (1st Cir. 2002) (citing *Apparel Art Int'l, Inc. v. Jacobson*, 967 F.2d 720, 723 (1st Cir. 1992)). Since Norfe fails to make even a preliminary showing that Defendants engaged in a scheme over the course of multiple years, attempted to defraud other parties, or had multiple fraudulent objectives,

Norfe's RICO claims would fail even if Defendants' emails did in fact further a fraudulent scheme against Norfe.

Finally, Defendants argue that I should decline to exercise supplemental jurisdiction over Norfe's claims arising under Puerto Rico law if I dismiss Norfe's RICO claims. I agree. Since Norfe's RICO claims are Norfe's only federal claims and I am dismissing those claims, I accordingly decline to exercise supplemental jurisdiction over Norfe's non-federal claims. *See Hernandez v. Ballesteros*, 333 F. Supp. 2d 6, 13 (D.P.R. 2004) ("Plaintiffs have also asserted Commonwealth breach of contract and fraud claims under this Court's supplemental jurisdiction . . . . However, given that Plaintiffs' RICO Act claim has been dismissed, the Court declines to exercise jurisdiction over the remaining claims. . . . where, as here, all federal claims against Defendant warrant dismissal prior to trial, the district court should decline to exercise supplemental jurisdiction.").

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are **GRANTED**. Norfe's federal RICO claim is dismissed with prejudice, and the remaining claims under Puerto Rico law are dismissed without prejudice.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 9th day of November 2021.

S/ *Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge